17-3701 and 3823 N. Ray Titus and Messrs. Campbell and Levin. Whenever you're ready. Yes, Your Honor. I'd like to reserve one minute. Okay. You better state your name. Yes. My name, Your Honor, is Douglas Campbell, firm of Campbell and Levin. I represent Paul and Bonnie Titus in this action. Now, at the outset, I'm probably a question I'm just going to ask of both sides, because I think you both know, in at least one prior case, the entire court recused because of a conflict. And so we had to go get an entire panel outside in the case three years ago. They did that. Do you have any reason to think that we should not decide this case now? Oh, I certainly don't. Okay. That's all I need to know. Thank you very much. Your Honor, Judge Fuentes, Judge Schwartz, before addressing the issues that we raised regarding what we see as the contortion of the venerable concept of tenancy by the entireties to create a marriage penalty, as well as the district court's abuse of discretion while doing so, I'd ask for leave to address a primal error in the district court's interpretation of a critically important provision of the Pennsylvania Uniform Fraudulent Transfer Act, a provision which provides a carve-out to protect a debtor's interest in exempt property. Pennsylvania's rules of statutory construction provide that, in the case of doubt, the intent of the General Assembly is to be ascertained by, quote, the object to be obtained by the statute, end quote, and the consequences of a particular interpretation. The act in question provides remedies for the fraudulent transfer of an asset. Its definitional terms clearly provide that the term asset does not include property to the extent it is exempt under non-bankruptcy law. The object to be obtained by this carve-out is obviously the protection of an individual's interest in exempt property. Now, let me just ask a dumb question. What is the legal source for the overall rule that Mr. and Mrs. Titus are liable for wage deposits that were not ultimately spent on household necessities? Is it the Pennsylvania statute, or is it the bankruptcy code? I believe that it's premised upon Pennsylvania law. I don't agree with the finding that they're liable for that, as I will be addressing, but it's not a matter of... under 544 comes into the bankruptcy code, but once you find that there is a fraudulent conveyance under state law brought into the code by 544, is the remedy in the Pennsylvania statute, or is it in 550, the bankruptcy code? In my view, it was the entirety of the state, not Mr. Titus and not Mrs. Titus individually. So the exposure would be the amounts deposited, less necessities, under Pennsylvania law? Under Pennsylvania law, I believe that the remedy of the plaintiff here is an in-rent remedy against the entirety of the state for the funds that may be in the account, and I think I have authority to support that. But then it would be all the deposits, right? Pardon? It would be all of the deposits? No, it would be the funds that are in the account at the time they seek relief. But the problem here, and what is wrong with the decisions that's happened, is that it creates personal liability on the part of the co-tenants by the entireties. And the only real remedy here, because the first transferee was the entirety of the state itself, a singular entity. The remedy is against the entirety of the state. It's an in-rent remedy. That's Pennsylvania law? Yes, yes. Yes, I think. Although this hasn't been addressed. What do you do with the fact that we've already spoken precedentially? Yeah. Out of the same transaction that led to this financial circumstance for many of the partners of this law firm, where it's already been determined that the deposit of the wages into an account is sufficient to make it a transferred item. And in this instance, an entireties account is simply a type of ownership between two people in an account. If the entireties you're suggesting is as if it's an independent entity. It is an independent entity. But the ownership of that entity is Mr. and Mrs. Titus in this circumstance, correct? To make the individuals, Mr. and Mrs. Titus, personally liable for the transfer to that separate legal entity, the entireties, is equivalent to making the shareholders of a corporation liable for a fraudulent transfer to that corporation, which you would not do. But you're suggesting that the entireties account is equivalent to the entity of a corporation? Yes. And in fact, this court has as so helped and in two cases. And perhaps I'll go to that because I'm fortunate. The decision is here. OK, from the other panel. And while it is thinly premised, I mean, it relies on a Pennsylvania Superior Court decision. But it's binding on us. It is. And that decision was 12 years. The wages put into the entireties account can be a transfer subject to fraudulent conveyance. Yes. And that's what Wettig said. It's a transfer to the account. That's right. To the entireties. And so I don't know how I can, absent going in bank, get around that. Oh, it that that is that we will accept it. We have to. Yeah. Going in bank is what you'd have to do. But I understand you did not go in bank when it's really questions of state law and which which is what we have here. But when it approached it on that basis, the transfer was. It would seem that your your stronger argument would be somehow that the. Unexplained non-wage deposits, which you have a stipulate, you have you have a stipulation that says there are certain deposits that are wage deposits, certain that are non-wage deposits. And it appears that non-wage deposits, your argument would be are excluded from the pot of which one could make take from for a fraudulent conveyance. Yes, they're not complained of. And you six hundred and thirty four or six hundred thirty five thousand dollars. Yes, that's right. And so what makes you if you can't explain it? What makes you think you can deduct it from the ultimate amount? Well, why should I not? Let's first of all, understand that these are deposits made into account during a time period 2003 to 2010 in the trial in which we were called upon to explain. This occurred in 2016. Think about in your personal life how well you can explain and remember what occurred in your account. You know, two years ago, four years ago, six, let alone 10 to 15 years ago. But this is an action specifically directed to the issue that the that wage deposits into the account were fraudulent transfers under the mining case in the mining doctrine. A credit is available because the burden is on the trustee. A credit becomes available against what we have characterized as objectionable expenditures. What is the burden that you're asking that be placed on the trustee to explain the unexplained? No, no, not at all. Your honor, the trustee's burden is to show that the wage deposits were used to fund objectionable expenditures. And if other deposits are made, the theory is that it is, Judge Markovitz held, it's as likely as not those other deposits funded the objectionable expenditures. As long as it could be explained. It was important to the bankruptcy judge that the source of those deposits be explained. And the court explained in its opinion why that was. Yes. And I really don't understand why that would make a difference. They are non-wage deposits. But are the co-owners of the account, the two people in the best position to explain the unexplained deposits? Your honor, what we can explain is that not wages. And it's a case that complains about the deposit of wages. And I'm just thinking about banking accounts. And aren't the depositors or the account holders the individuals who are in the very best position to explain? They would be. But they're being called upon to explain what occurred over a period of seven years from 2003 to 2010. They were not told in 2000 until 2012 or 2014 that they had a burden of coming forward and explaining all these deposits. Because nobody knew that the mining that the mining theory would be applied to their case as a matter of fact. But then you're asking that the trustee explain it or. No, neither. What we have is a stipulation as to what they are. Your honor, you have a stipulation that says they're unexplained. Now, we have a stipulation that they're not wages, that they're not wages. But it also doesn't explain the source. Right. And we don't think that that should make any difference. But that was the ruling that the court applied. And you're trying to suggest the court erred by not holding. Yes, I am. That's exactly right. I'm saying that that really what purpose is served by saying what the source is. Isn't the purpose in part to give you the benefit, meaning that Titus is the benefit of trying to show other places that might have been the source of paying down the non necessities, the objectionable expenditures. Wasn't this actually an effort by the court to help you help your clients not have every dollar of their wages being taxed? So wasn't this mostly a kind of a decision to make it more the playing field a bit more even? Why should it matter if it's a Social Security deposit or a refund from from something or withdrawal from a securities account? The one thing is sure, it's not a wage deposit. But what wasn't the court's explanation is to ensure that. Items were not being created liquid into liquid assets and then to put into the account that maybe shouldn't have put being put in there in an effort to try to shield the collection on the wages. Wasn't that you would obtain no economic advantage by doing so because you would have to part with your money to get there. And by the way, there's no suggestion that the Titus's did anything wrong. There's no intent to hinder, delay or defraud. And Judge Agresti said there's nothing. Please understand this. There's no advantage to doing what you just described because you have to part with your money and put it in the account. OK, then you're out that money. The other money, the wage money in the account stays there. And the creditor has a right to go take the money that's in the account. That's what happened in wedding. Then shouldn't the analysis be you? Your client has to part with the wages minus the necessities they could show. And that's the amount that should be the fraudulent transfer. If you're saying focus only. No, no. Because if you approach it that way, then you're relieving the trustee of his burden. Are you saying to show that the money was used for less than a fair consideration? You're saying that a certain amount of the funds in the accounts were not wages. So that would be the case. Yes. They deposited everything in their life was deposited into the account wages as well as anything else since 1957. That's how they behave. If not, if not the trustee, who, if not the account holders, who is in the best position to determine the source of the monies deposited in their accounts? Well, I suppose they are. But again, if once you've established that the deposit was not a wage deposit, I think the mission's been accomplished at that point because this is a case that's only focused on the wage deposits as being the fraudulent transfers. Any other deposit that goes into the account serves as a credit against what is liability for objectionable expenditures. I think it's irrelevant, really, where the source is once you determine that it's non-wage in the question. You put it another way. Is what Judge Conte asked be done on remand? Does that put on the Titus's the burden of production or the burden of persuasion? Burden of production. Burden of production. The burden of persuasion never moves from the trustee. And what she asked on remand, we accomplished. We got a stipulation that they were non-wage deposits. Prior to the time she remanded, we didn't have that stipulation. Well, I thought if I'm playing out the string here, that perhaps what was done, yes, you stated the law correctly. But what, in fact, may have happened is they had to persuade the court that the $268,000 was explainable. Well, what we did was we obtained a stipulation that they weren't wages. OK. Now, let me ask you this. In terms of how you got a pot and the pot is the wages that are in the account. That's what could be recovered in connection with a fraudulent conveyance. If they're one, if one exists. Right. Right. And let's say that that pot is. Make it simple. Hundred cents and. Fifty two cents of that we know is wages and 48 percent for your sense is not wages. I take a penny out. What are the chances of that being wages that are recoverable? Well, that's the interesting question of proportionality and what you can get from fifth grade probabilities. What is the if I take a penny out, what is the chance that that is wages and what is the chance that's not wages? Well, it would be based upon the proportionality of the composition to forty eight percent chance that would be wages. Forty eight percent. If you want to do tracing. Right. Right. Right. But but where someone has a burden of proving something, then I think you move away from that. I mean, prove Judge Agresti back in Oberdeck in 2012, 2013. I said, you know, maybe that pro rata way is makes the most sense. And here he dropped a footnote saying there's an argument. You could say that pro rata makes more sense. But he felt he was bound by what Judge Conti did. But going forward, going forward. Why wouldn't pro rata make sense? Well, because I don't think you should ever even get to it, because I believe that the transfer was to the entireties and that the remedy here. But this goes back to the beginning. We're stuck. We're stuck with what? This this is a transfer. Yes. But it could be under Pennsylvania law. And I guess it is in this case a fraudulent conveyance. Right. It's assumed for the moment it is. Yep. So now you've got this pot and some of it's recoverable for the fraudulent conveyance. Some of it isn't. And you have, again, 100 cents and the division is roughly 50 to 48. Why not just say 52 percent? Is. Wages and 48 percent is not in whatever is not wages. I mean, you're sort of getting your own. You're getting your legal argument, correct? That non-wage deposits are not wages and therefore they're excluded from the pot. Yes, that might be. But I have to say, honestly, judge, I don't think we should even get to the question of the allocation, because, yes, there was a transfer. But the question is to whom or to what? And the transfer was to the entirety of the state, not to the Titus's. So this question of personal liability shouldn't even arise. I think the judge's question, though, is assumed for the purposes of this question. I understand whether or not that approach makes sense. And I would like to just tag on. Does that approach make sense? Yes. Would. What would that what would that impact you in terms of trying? Because I think that relieves the trustee of the trustee's burden of showing that the wage dollars were actually spent on the non necessities. The trustee has to show all the elements of a fraudulent conveyance. That's the way it's phrased. Yes. So if the trustee does show all the elements of a fraudulent conveyance, now we're talking about the remedy and how you go about the method of calculating the amount that is. Paid out from that entirety's account for the fraudulent conveyance. Well, but I think your honor, what we're talking about is not the remedy. We're talking about one of the elements, which is showing that the that there was less than a fair consideration. That is that the wages were used to fund an objectionable expenditure. I wonder, Mr. Campbell, if if we were to adopt your view, doesn't that basically incentivize defendants to deposit unexplainable sums into bank accounts? No. In order to avoid liability? No, absolutely. Because if I advise the client to do that, they would kill me because what you're doing is telling them, take good money that you have in your hands right now. OK, and here's a secret plan. Put it in this account. Well, they're out that money. They say, hey, that's great. What do I get for this? Well, the fact is they might get what it does is leave other money in the account. And the trustee has a right, as happened in Wedding, to get an attachment of the funds in the account. That's the in rem remedy that the trustee has. So no economic advantage is gained by doing what you've described. Your view is that it's the trustee's burden to explain the source of all funds. No, trustee, I look, the source, I think, is just sort of a red herring because what we have is a stipulation that it wasn't wages that the deposits weren't wages. I don't think knowing the source should make any difference on the right to the credit. What's the calculation then? Assume that the court were to conclude that the transfer of the wages into the attorney's account is a fraudulent transfer. That's defined by the statute. And the court and our court. And yes, we need to come up with a remedy. What is the calculation? Well, the remedy, the remedy would be in that case, if my contention is accepted, the remedy is against the entirety of the state itself. And you could have access to the funds. Go back. Pretend that you can't create some kind of shield about the entirety's account. It's distinct from the two. You have to assume it for the person. My question, though, I'm asking you, you're at the point of advocating a mathematical arithmetic formula to a court bankruptcy court. How does a court, when confronted with a fraudulent transfer case, calculate the judgment? What's the you take? You take objectionable expenditures. OK, so non-necessities. Yeah, non-necessity. And what am I? And then you deduct from that non-wage deposits. Non-wage deposits. And in this case, if you did that, the judgment would move from whatever it was, two hundred sixty eight thousand dollars to about five thousand dollars. If you gave us the benefit, I'm sorry, you subtract two sixty eight from two seventy three. And you're saying, yes, yes, the liability would be five thousand and not two seventy three. Yes. When you go before the bankruptcy court, did you or someone on your behalf argue that arithmetic? Was that the methodology that you were asking? Yes. Yes. Yes. Yes. In the end. And then and then there are a lot of ends here. So which and the first appeal, the second appeal. Yeah. In the end, in the second trial, when we went back down, that's what we that's what we argued. And then the hang up was obviously, OK, you've got a stipulation that they're non-wage deposits, but you haven't told us the source. And then we basically say, well, what's that matter? They're non-wage deposits. Your case rise or fall on whether we determined that it was the trustees burden to explain the unexplainable funds in the account. Well, I don't think we in other words, I don't think I don't think this case either side needs to explain the source of these deposits. I think that that's absolutely irrelevant. I think what we have is a stipulation that they weren't wages. And that alone gives us the right to the credit under the scheme that has been allowed in mind. I really don't think that that's an issue. Let's hear from Mr. Levin. Thank you. You're welcome. Good morning, your honor's Neil Levin on behalf of the bankruptcy trustee. You know, I'd like to start out by underscoring an extremely important point. There is no mandate or a single piece of authority. There's no finding. There's no holding any of the cases before you. Minen, Stinner, Garden State, Welker, Waters or Weddock. That says that the transferees are entitled to a dollar for dollar offset of non-wage deposits. That law doesn't exist. I'm going to apologize in advance for my role in creating the most convoluted case of otherwise relatively simple concepts, concepts that have been around for over 70 years in the Commonwealth of Pennsylvania. I did play a role in that. My predecessor attorney played a role in that. Five bankruptcy judges played a role in that. We have hundreds and hundreds of pages of opinions in multiple cases from multiple judges. I mean, let me back up and just ask. It looks as if. In the way back machine, when people were trying to figure out what to appeal. That whoever has the burden of persuasion. In these cases, whether it be you or the Titus's. Cannot prevail because the account is fungible, it's intermixed. And you have to come up with a way to deal with that. It looks as if what you appealed was, hey, the burden of production and the burden of persuasion are incorrect. You can't put the burden of persuasion on us, the trustee, because it's an impossible task. But what does that have to do with the methodology of how you calculate the fraudulent transfer? Because I think, as Judge Forensics was saying, we can't work in a vacuum. I don't disagree that we possess the burden of persuasion. What we need to persuade the court is or the prior effect is that transfers were made from an individual judgment debtor. To a third party. And as Judge Schwartz has said repeatedly today, a transfer into an entirety's account has been well established as being such a transfer under the fraudulent transfer act. And there's analysis, even in the Weddock opinion, that says because it isn't an entirety's account, because it is protected from creditors. The fact that we take it as being this thing that is not protected from creditors. And putting it into something that is protected from creditors is, in fact, that transfer that benefits the co-owner of that entirety's account. That's well established. I possess the burden of persuasion. The trustee here possesses the burden of persuasion that those transfers actually did occur in that fashion. That's well established in this case. There's no – 99% of the facts are not in dispute here. It's the mathematics, as Your Honor has suggested, Judge Ambrose. How we calculate what we have. And I can quickly turn to appendix page 1043, which was the appendix attached to Judge Agristi's opinion, which is the one-page calculation of how we got to the number. And I'd like to emphasize that, just so we're not confused, because there's two numbers that fall within the $200,000 category. There's the $268,000 of unexplained deposits. But that's not what formed the amount of the judgment. The amount of the judgment was formed on an analysis that I agree with in most part. But then we get to that little deduction at the end of the $634,000 of other deposits. The deposits we know. That's where the trustee says the error occurred. Yeah, but let's talk about when you waive that argument. Because that's not what your position – when I'm talking to you personally. Your predecessor counsel. But the trustee didn't argue that in the first instance. How can we forgive such a large change of position? Understandably. First of all, we think that we did present this in the first appeal. In how you think you weigh it. Because I think that we need to hear how you explain when, in the record, it demonstrates, among other things, a point heading in a brief. In the first appeal, that says the calculation method was correct. Bold. In the center of a page. And your appeal to us is, we changed our mind. And you said that on remand. How is there not a waiver? So, Your Honor, first, Judge Cochise's opinion, appendix page 574, outlines what our appeal was the first time around. In it, she says that we're talking about our burdens. Our burdens encompass everything we're talking about here. The burden of proving up the deposits. The burden of proving up the necessities. The burden of proving up what's explainable and what isn't explainable. The vacuum that we were working in, as Judge Fuentes has pointed out. All those things fell under that category. And might I remind the Court that when that first appeal was taken, we didn't have 90% of the evidence that we have now. But whose fault is that? That's not the Court's fault. The Court ruled that it was their fault. The Court ruled that it was the Titus' fault. How does that change the methodology? If one is a burden of proof, I've got to prove certain things to satisfy my elements of my cause of action on liability. The next is an arithmetic formula to come up with a judgment. You can't get to the arithmetic without knowing what the numbers are. We didn't know what the numbers were. Before Judge Conte, we had no idea. The only numbers we really knew was how much in wages. But how does that change the math? It just gives you different numbers to plug in. You came up with a calculation. And when I say you, I'm talking about your predecessor counsel, but the trustee advocated for a particular mathematical formula. All you're telling us now is, well, now we have different numbers to plug into the formula. But really what you want is to change the formula. But that formula didn't have the impact at the time that it did now, based on the numbers. Again, back to Judge Dristey's appendix, at appendix 1043, 90% of the numbers on the page weren't known. And so the analysis couldn't even be done this way. How he performed the analysis was novel. But why would that be error for the district court? It's within the district court's discretion to select a methodology for the arithmetic. It didn't abuse its discretion. The fact that a party changes its position doesn't mean the district court erred. This assumes that you've preserved the argument you're making to us. I know you're trying to say somehow the burden of proof, burden of persuasion, somehow is connected with the ultimate arithmetic. But why should the district court be deemed as making a mistake when they could elect whatever appropriate mathematical formula it wants? I don't believe that they can. I don't believe it was up to the district court to determine this. I think it had already been determined. And if I may go through the math, I'll show you why. But I'm going to, as an aside, so I can present my final argument on this point and move forward, we did lay out authority, which suggests when it is that we can come back and talk about something that perhaps wasn't talked about with the same specificity in the prior appeal. We've laid out those reasons. One being the Whittock opinion itself, which clarifies better than anyone else has what the position of the court is. Only on the burden of proof. It just made clear who had the burden of proof and production and persuasion. But when it came to the methodology point, the third circuit made an observation of what methodology was used in Whittock, by the way, which apparently was the same type of methodology used in every other one of the bankruptcies that arose out of this lease. But the facts were very different in those other cases, Your Honor, because we didn't have all these other deposits. Exactly. And here's my point. Since the facts were different, the discretion of the court to choose whatever methodology it felt was appropriate is within their authority. So if we had a million dollar pot for which the wages were came from the judgment debtor, there were no other deposits into that million dollar pot. And from that million dollar pot, all we were left to was divided in two pieces, the piece that goes to necessities and the piece that goes to non necessities. We wouldn't be here today. You're describing Whittock, in other words. Exactly. But but here. You know, we've we've got some language from an opinion I wrote way back when, which says an issue is waived on remand if it was not raised in a party's prior appeal and was not explicitly or implicitly remanded for further proceedings. Case called Scrappett, which is at three seventy two. Third, one ninety three. If the first appeal to Judge Conte concedes that the calculation method for determining how much is recoverable is the correct methodology. And the only thing is that you put the burden of persuasion on me and it's an impossible burden. How is that not a waiver in a 75 page opinion written by Judge Markowitz? Only half a page. Only a half a page deals with this issue because it wasn't before the court. It didn't matter back then. These issues didn't matter because of the very small amount of information that we were dealing with at the time. And I specifically refer to Appendix four zero two. This is where Judge Markowitz otherwise gets it wrong, because otherwise he was spot on. And Judge Conte was otherwise spot on. And of course, this court was spot on. And I argued the last two appeals to this court and it was spot on. We all agree that what we should be looking at is simply the necessities to offset the amount of wages that were transferred in. We never get to unexplained deposits. We never get to any other deposit. It was only one item, a single item, one hundred and forty two thousand dollars of Social Security benefits that Judge Markowitz addressed in the case prior to it first going before Judge Conte. Let me ask you to put on your futures hat for other cases with respect to the trustee. You have a an entireties account that has wages in it and non wages. Forget this case. It's it's found that there has been a fraudulent transfer. What method do you suggest going forward if you had a blank slate? Thank you. To answer that question, I want us to back up just for a minute and look at the very concept that we're dealing with here, which is reasonably equivalent value. The courts have held that the reason we're talking about reasonably equivalent value is we find value in the debtor having to take care of itself, him or herself. So if the debtor makes a million dollars and transfers those wages into an entireties account, the debtors allowed to live. Those are the necessities we're going to offset that. So, again, in a very simplistic way, if we have a million dollars that are transferred in wages into an entireties account and it costs two hundred and fifty thousand dollars over that same period of time to live. Otherwise, necessities, then the judgment is for seven hundred and fifty thousand dollars. So you're advocating the total transfer, what you're calling the total transfer or what some prior integration was, the other deposit relevant, correct? That's that's the calculation you're advocating. Yes, you are. And if that's the calculation you're advocating, then at the time of the first trial, you could have gotten from Schneider all of the wages. You could have asked for discovery, all of the necessity and subtracted that nice, simple math and we're done. We did. And what happened? We didn't get it. We didn't get it. The district court overruled it and did the non. No, we didn't get the papers. We didn't get the information. We couldn't even satisfy our burden. We didn't have the credit card statements. We didn't have a bank statement. OK, but the math, the calculation, then it's the total transfer. Forget the forget your what you had access. Right. That's what you wanted. Right. And now we have to enter in the idea that maybe there's some other money that goes into the account. That's this case. That was a wedding. That wasn't the other case. But I think Judge Amber's question was, what is the calculation you'd be advocating? Right. So let me give you let me give you a hypothetical and then we can come back. Sure. There's a million dollars in the account. Five hundred and twenty thousand is wages. Four hundred and eighty thousand is non wages. There has been found to be a fraudulent. Transfer of the five hundred and twenty in wages that that and the amount that's recoverable is is wages. Very good. How what method would you use to. Get the monies that you think are owed to come back to the estate. Five hundred and twenty. But we need to know what the necessities are before we can finish the analysis runner. We want to throw in the necessities number two hundred. OK. The 480 and non wages. As Judge Markovits said, it's just as likely that those went to pay for the necessities as not. No, that's not 50 50. It's 48 percent. Right. But it could have gone to pay for the wages because the necessities, the necessities are only two hundred thousand. So we've got five hundred and twenty in wages that are transferred in. We have four hundred and eighty to come from other sources. Why couldn't the two hundred thousand dollars in expenses have been paid by the four hundred and eighty and other sources. But that's why I like your approach. Theoretically, that's why I like the report. I'm sorry. I didn't get that. No, thanks. Go ahead. Can you finish? That's why I like the pro rata port approach that we put into the into the pleadings as well, because we may never really know. Because how can we possibly do that? How can we take this dollar in the pro rata approach? They'll put in as an alternative approach. Wasn't it first argued to the. This is, again, the first time it's raised is on remand. And and you argue in the alternative, you can do pro rata. But wasn't your main point to the to the court was total transfer? No, we offered pro rata to Judge Christie as well as in in the alternative, though. Yeah, of course. Because because I understand. Very different analysis, though. The pro rata approach is quite different than the total transfer. But I understand that not all cases will be the same. It's very different. It's very difficult to understand where that one dollar goes. I completely understand your point. And I think that that when we have a simplistic case like wedding, when we have a simplistic case like Oberdyke or Arbogast, where we have a non wage earner as a spouse, then it's very easy to do it straight. But where we have this situation where there are the entry of. And let us understand the dangers here. The danger is this. We don't have a non wage earning spouse. The million dollars goes into the account. Oh, I may owe someone some money. And I'm going to protect that money by liquidating an exempt asset somewhere else and depositing it into that account and get a dollar for dollar offset. That math doesn't work. Your honors. It doesn't work. It defeats the very nature of reasonably equivalent value. The reasonably equivalent value concept is there because we're saying is, look, you're transferring in the assets away from a creditor. However, we're going to let you live. You have to be able to spend your money on something. But if I've got 17 other sources from which I can spend that money, why punish the creditor? So it sounds to me like when this case went back. When you were advocating the. At some point, the pro rata approach, it seems that that takes care of the impossible burden of persuasion problem that exists. I agree it would. OK, now let's assume for the moment we're stuck with the approach that the court gave, which is the non necessities. What was it? What was the one the NN, what I called it, the other deposit methodology expenditures. Yeah. Yes. How did the court come out on that? I'm sorry. What did the court say is the way Judge Agresti. So this time around, what did he say? Again, we agree with the analysis of Judge Agresti up to the point where he takes the non wage deposits and subtracts it from the amount we'd otherwise be talking about. It's one line item, Your Honor. And that's, again, appendix one zero four three. We have eleven one point one million dollars in those wages. We have the agreed upon. Oh, we agreed. Finally, it's a long time. But we got there. We agreed on what would be the necessities. We deduct those necessities and the rest should be our amount, which is eight hundred ninety four thousand four hundred and twenty dollars and eighty three cents. It's the last. It's the second, the last line item on Judge Agresti's analysis where we all go wrong and that's where economics doesn't work. It just simply doesn't work. Any other bankruptcies arising from the tightest, tightest breach of lease case? Are there any other out there? Thank goodness. No. OK. Can you also tell me how much has been collected towards the three million plus? That's an embarrassing answer, Your Honor. I almost wish I didn't have to give it. But let's just call it far less than the four million dollars that had been entered and awarded by the state court. I think I really don't have the tally. I'm sure it's not even a million and a half. Thank you. According to you, what is the total liability? The tightnesses are responsible for the amount we would say based on the simplistic analysis. Two seventy three. No, I got that wrong. What we're advocating on. Go ahead. We already have a judgment currently of two seventy three. OK. Eight sixty two sixty eight. That judgment exists today. And that's how Judge Agresti got to it. But he got to it because he deducted the six hundred and thirty four thousand dollars in these other deposits that could easily have paid for the debtor's necessities. And so we're saying remove that line item and you come up with eight hundred ninety four thousand four hundred twenty dollars and eighty three cents. It needs to be that simple. Or if we go pro rata. Even if we can't explain the deposits, but there are other deposits in this sphere of entities account, then I believe we're six hundred and somewhere around six hundred and fifty. It's an arcading. Yeah, I when I did your program, I came up with something like five thirty. Somewhere in that middle figure, you know, it depends if you add in the two hundred and sixty eight and unexplained deposits as well. Now, if you are stuck with the non necessities minus non wage deposits, if that's if we're stuck with that. Why is Mr. Campbell not correct that you have to take out the two sixty eight from two seventy three? Because he made it up. He didn't make it up. Well, that's in the stipulation stipulation. The Titus is stipulated because I identify the source for the balance of two sixty eight one sixty seven oh nine non wage deposits remaining after subtracting the non wage deposits detailed above from the nine hundred and three one sixty five ninety two total of non wage deposits identified in the trustees exhibit. In other words, the court saying that they're not making it up. The court is saying they can't explain it, but I'm not challenging their credibility. I'm not saying he made up the figure, saying he made up the concept of the offset. There's no law supporting doing so. And it doesn't make any economic sense. Again, back to the math and back to the concept of reasonably equivalent value. Why is it reasonably equivalent value to the missus to have an extra two hundred sixty thousand dollars in unexplained deposits? What value was given in exchange for the transfer of the wages? The fraudulent transfer concept is very simple. You've all espoused it. It's we transferred an asset that otherwise was in the hands of the judgment debtor and attachable by a predator into or given to a third party or entity. And we should be able to get that back with the exception of necessities. Why or why do unexplained deposits somehow become part of the equation? It doesn't make any mathematical sense. It was your view that the stipulation between the parties was a fat skip on the amount of non wage. Right. And then the district court. Sorry. The bankruptcy court in the first instance following the district court's lead was applying a principle and saying that may be a fact. But I'm not going to give any weight to that fact because I said you have to explain this for the reasons you just articulated it. It doesn't. It's an equipoise. I believe that is how Judge Christie wrote. All right. Thank you very much. Thank you very much for your time. I do want to mention it may surprise you to know, even though this case is started when the 2007 is going on to 2017. The trustee has never done any discovery in this case. Not a lick. And anything that we produced was after 2012 when Judge Markovits first informed us that we had a burden of production, which which, of course, we then complied with. Judge Wettig did recognize that a transfer occurred. I don't dispute that. But he he did not recognize that the transfer occurred to Mrs. Titus. He said that he wouldn't see her as being liable until she exercised some control over the money in the account. And if you don't go along with his rationale, then what you're in effect doing is endorsing a marriage penalty. The fact is that the Titus's would have been better off being unmarried in this situation because Pennsylvania's law provides that when it's just a joint account, unmarried people, that the funds in the account are attributed to the respective co-owners according to their respective contributions. So in this case, if they had been unmarried people and Mr. Titus put his wages in, only he would be deemed to be the owner of those wages and she wouldn't have any involvement. But as this has evolved in the way it's come down, she if she's considered a transferee of these wages, you get the absurd result that we have here that when Mr. Titus spent one hundred and fifty five dollars to put flowers on his parents graves, she was found to be liable to his creditor for that one hundred and fifty five dollars because it was held to be an objectionable expenditure. Isn't that what the case law provides? That's what the result has been in this case. That happened here. He spent sixty five dollars to pay for his grandson's admission application to Notre Dame. That was found to be a non necessity and she's held liable to his creditor for that sixty five dollars. He paid one hundred and sixty eighty six dollars to buy pizza for minority grade school students that he brought downtown to observe the operation of the courts. These are people that he ran a moot court competition with. He bought them pizza when they came downtown. The court found that to be a non necessity and made her liable for one hundred and eighty six dollars. This is the very first issue that Whittock decided as to. And we're not in bank. We're not in bank. No, no, no. This is a separate issue. That first issue that was decided in Whittock was that it's an asset that is that it's not exempt. This issue that arises is, OK, if it was a transfer of an asset, who was it transferred to? And I say it was transferred to the entirety of the state. The mining case says, oh, no, we don't recognize the entirety of the state. We consider it a transfer to the owners of the entirety of the state. Mrs. Titus and Mr. Titus, if you do that, you end up with the result that she's liable because he spent one hundred and fifty five dollars on this to put flowers on his parents. Great. I urge you to take a hard look at this because this result is clearly unjust. Thank you. Thank you very much. Thank you to both counsel and well presented arguments. We'll take the matter.